**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IVELISSE HERNANDEZ-NIEVES,** | : | **Civil No.  1:22-CV-135** |
| **o/b/o D.J.A.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.     Introduction

The Social Security Act provides a social safety net for children who face profoundly disabling physical or emotional impairments but in order to qualify for these benefits, a child must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has interpreted this statutory provision in regulations which provide that a child whose condition meets, or medically or functionally equals, the criteria of a listed impairment must be found disabled. 20 C.F.R. § 416.924(a). When determining this issue of childhood disability, there are six domains of

functioning which an Administrative Law Judge (ALJ) must consider: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving about and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). In order to establish disability, an ALJ must conclude that a child exhibits either a "marked" limitation in two of these six domains, or an "extreme" limitation in any single domain. 20 C.F.R. § 416.926a(d).

Once a childhood disability determination has been made, the Supreme Court has underscored for us the limited scope of our substantive review of that decision on appeal, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The plaintiff, Ivelisse Hernandez-Nieves, appeals from an adverse decision of the Commissioner of Social Security denying her minor child, D.J.A.'s, latest application for Supplemental Security Income (SSI) under the Social Security Act. On appeal, the plaintiff challenges the ALJ's decision, arguing that the ALJ erred in weighing the opinion of a state agency expert and in evaluating the various teacher questionnaires competed in D.J.A.'s case. The plaintiff also contends that the ALJ's overall analysis of the degree of D.J.A.'s impairment was flawed. However, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Accordingly, for the reasons set forth below, the decision of the Commissioner will be affirmed.

## II.    **Statement of Facts and of the Case**

On August 2, 2019, Ivelisse Hernandez-Nieves applied for supplemental security benefits on behalf of her minor daughter D.J.A., alleging an onset of disability in February of 2019. (Tr. 21). D.J.A. was born in January of 2006 and was thirteen years old at the time of this disability application. (Tr. 22).

This was not the first Social Security application which Hernandez-Nieves had submitted on behalf of D.J.A. Quite the contrary, it appears that Hernandez-Nieves had submitted four prior applications on behalf of her daughter between 2009 and 2016. (Tr. 96). Her most recent application had been denied in May of 2019, several months prior to the filing of the instant application. (Tr. 66-90).

In assessing whether D.J.A suffered from marked or extreme impairments in any of the six domains of functioning which an Administrative Law Judge (ALJ) must consider, 20 C.F.R. § 416.926a(b)(1)(i)-(vi), the ALJ was presented with an academic and clinical record which was mixed and equivocal but contained substantial evidence indicating that D.J.A.'s impairments were not wholly disabling. Turning first to D.J.A.'s academic records, (Tr. 330-660), those records revealed that for the most part, D.J.A. attained passing grades in her classes. (Tr. 330-39, 589-661). Generally, D.J.A.'s grades were Bs and Cs, although she earned a number of As and Fs during her academic career. (Id.) By high school her cumulative grade point average (GPA) was 2.2. (Tr. 591).

D.J.A.'s standardized test scores revealed some degree of impairment on her part and were consistently at basic or below basic levels, reflecting lower strength in academic matters. (Tr. 340-42, 499-520). As a result, D.J.A. received academic

4

support through an IEP, and was also provided assistance through school counselling.

Moreover, the teacher questionnaires completed by a series of instructors documented that, while D.J.A. faced challenges in school particularly as it related to following complex instructions, none of these teacher questionnaires characterized D.J.A.'s impairments as either marked or extreme. (Tr. 349-55, 375-86, 414-20, 423-29, 491-97, 555-60). Instead, with respect to the realms of (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving about and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being, these questionnaires generally reported as follows:

According to her teachers D.J.A. experienced moderate difficulties acquiring and using information. (Tr. 350, 376, 415, 423). As for completing tasks, D.J.A. encountered slight to moderate difficulties, particularly as it related to completing tasks that entailed multi-step directions. (Tr. 352, 377, 416). She had only slight to moderate problems interacting with others and caring for herself. (Tr. 352, 354, 378, 380, 417, 419). Finally, D.J.A. had no difficulties manipulating objects according to her instructors. (Tr. 353, 379, 418).

For the most part, these teacher questionnaires were unaccompanied by any narratives, but the limited narratives provided by D.J.A.'s instructors did not describe her deportment in ways which suggested that D.J.A. was suffering from any marked or extreme impairments. For example, these narratives reported that D.J.A. had shown great improvement during middle school, was respectful most of the time, and described her as a typical middle school student. (Tr. 350-52).

Clinical counseling records also typically recorded that D.J.A.'s emotional impairments were generally mild to moderate, although she engaged in some isolated episodes of self injurious behavior which she attributed to COVID-related depression. Between August and September of 2018, D.J.A. received counseling therapy through Philhaven. (Tr. 661-692). The notes of these treatment sessions revealed tensions between D.J.A. and her mother, but generally indicated that she responded appropriately to counseling. (Id.) By October of 2018, D.J.A. was reporting that home and school were going well, and her grades were As and Bs. (Tr. 673).

Between March 2019 and February of 2021, D.J.A. received intermittent counseling through Pennsylvania Counselling Services. (Tr. 788-98, 862-969). While these medical records documented some isolated instances of self-injurious cutting behavior by D.J.A. in 2020, which she attributed to COVID-related

6

depression, (Tr. 807-09), for the most part these treatment notes described D.J.A. as pleasant and cooperative. (Tr. 862-969). Her presenting problems, which included anxiety, depression, sadness, lethargy. and lack of focus, were typically characterized as moderate or mild. (Id.) With a few exceptions, D.J.A.'s treatment progress was generally described as moderate to good, and her capacity to benefit from treatment was reported to be good to very good. (Id.)

Given these generally unremarkable academic and treatment records, the state agency experts who assessed D.J.A.'s impairments all agreed that she did not suffer from marked or extreme limitations in any of these six basic realms of functioning. Initially in March of 2020, Dr. Thomas Fink determined based upon a review of D.J.A.'s school and treatment records that she experienced less than marked limitations in acquiring and using information, attending and competing tasks, interacting with others, and caring for herself. (Tr. 100-01). In the realms of manipulating objects and physical well-being, Dr. Fink concluded that D.J.A. exhibited no limitations. (Id.) These findings were echoed by a second state agency expert, Dr. John Gavazzi, during a November 5, 2020 reconsideration review of D.J.A.'s medical records. (Tr. 116-17).

Mental status examination of D.J.A. conducted by Dr. Kathleen Ledermann in March of 2020, (Tr. 732-40), and Dr. John Kajic in October of 2020, (Tr. 767-

75), also failed to disclose any marked or extreme impairments. While these consultative examinations had only limited value due to the failure of the examining sources to specifically evaluate whether D.J.A. had marked or extreme impairments in any of these six realms of functioning, the reports generally indicated that D.J.A.'s appearance and manner were appropriate, (Tr. 734, 769), her speech was fluent, her thoughts were coherent and goal-oriented, her sensorium was clear and she was fully oriented in all spheres. (Tr. 734, 769, 770). She displayed fair insight and judgment, (Tr. 735), and standard test results showed mild deficits in reading, moderate deficits in spelling, and significant deficits in math skills. (Id.) Her non-verbal IQ was 108, which ranked at the 42nd percentile. (Id.)

It was against this backdrop that the ALJ conducted a hearing in D.J.A.'s case on May 24, 2021. (Tr. 37-59). D.J.A. and her mother both testified at this hearing. (Id.) In her testimony, D.J.A. indicated that she got along well with her teachers and classmates. (Tr. 41). She reported that her prescribed medications helped with her depression. (Tr. 42). According to D.J.A. her grades were okay, and generally were As, Bs, and Cs, with one exception, U.S. History, where she had a failing grade. (Id.)

Following this hearing on June 14, 2021 the ALJ issued a decision, denying Hernandez-Nieves' application for SSI on behalf of D.J.A. (Tr. 15-30). The ALJ employed the three-step evaluation process to determine whether a child is eligible for SSI payments by reason of disability. As part of this analysis the ALJ sequentially addressed: (1) whether the child was engaged in substantial gainful activity; (2) whether the child had a medically determinable, severe impairment; (3) whether the child's impairment or combination of impairments met, medically equaled, or functionally equaled an impairment listed in part B of 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 416.924.

In this decision, the ALJ first concluded that D.J.A. had not engaged in substantial gainful activity since August 2, 2019, the application date. (Tr. 22). At Step 2 of the sequential analysis, the ALJ found that the D.J.A. had the following severe impairments: depression, anxiety, and learning disability. (Id.) At Step 3 the ALJ determined that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 22-29).

In reaching this result, the ALJ found that D.J.A. experienced no impairments in manipulating objects or physical well-being. (Tr. 24). As for D.J.A.'s functioning in the realms of acquiring information, completing tasks,

interacting with others, and the ability to care for herself, the ALJ found that she displayed less than marked limitations. (Id.) The ALJ's decision justified each of these findings based upon the totality of the academic, clinical and medical opinion record, citing D.J.A.'s school performance, teacher appraisals, activities of daily living, and treatment records, all of which indicated that D.J.A.'s impairments were neither marked nor extreme. (Tr. 26-29). The ALJ also noted that these findings were consistent with the state agency expert opinions, which the ALJ deemed to be persuasive based upon the academic and clinical record. (Tr. 29). Having made these findings, the ALJ concluded that D.J.A. had not met the exacting standards for childhood disability and denied her claim. (Tr. 30).

This appeal followed. (Doc. 1). On appeal, the plaintiff contends that the ALJ erred in weighing the opinion of a state agency expert and in evaluating the various teacher questionnaires competed in D.J.A.'s case. The plaintiff further asserts that the ALJ's overall analysis of the degree of D.J.A.'s impairment was flawed. This matter has been fully briefed by the parties and is now ripe for resolution. As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record under the deferential standard of review we are enjoyed to employ, the ALJ's decision will be affirmed.

III.   **Discussion**

A.   **Child Disability Claims: Initial Burdens of Proof, Persuasion and Articulation for the ALJ**

The legal standards which govern an ALJ's consideration of a childhood disability claim under the Act are familiar ones.

The Social Security Act provides that in order to qualify for disability benefits, a child must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The Commissioner has interpreted this statutory provision in regulations which provide that a child whose condition meets, medically equals, or functionally equals the criteria of a listed impairment must be found disabled. Similarly, a child whose impairment(s) do not meet or equal (medically or functionally) the listing criteria contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 is not disabled. 20 C.F.R. § 416.924(a).

Under these regulations, when determining the issue of functional equivalence to a listed impairment, there are six domains of functioning which an ALJ must consider: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving about and

11

Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). In order to establish a disabling level of functional equivalence to a listed impairment, an ALJ must conclude that a child exhibits either a "marked" limitation in two of these six domains, or an "extreme" limitation in any single domain. 20 C.F.R. § 416.926a(d). The Commissioner defines a "marked" limitation as one which:

> [I]nterferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-today functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2).

> The Commissioner then defines an "extreme" limitation as one which:

> [I]nterferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Extreme' limitation also means a limitation that is 'more than marked.' 'Extreme' limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3).

## B.     <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if

the Commissioner's decision is supported by substantial evidence the court must

scrutinize the record as a whole."  Leslie v. Barnhart, 304 F. Supp.2d 623, 627

(M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review

in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that [she] is not disabled

is supported by substantial evidence and was reached based upon a correct

application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014

14

WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are

15

insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## C.   Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of the severity of a claimant's symptoms. On this score, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not

16

credible and why he found it not credible. <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir.1994) (citing <u>Stewart v. Sec'y of Health, Education and Welfare</u>, 714 F.2d 287, 290 (3d Cir.1983)); <u>see also Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)).

<u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 409 (3d Cir. 1979); accord <u>Snedeker v. Comm'r of Soc. Sec.</u>, 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

<u>McKean v. Colvin</u>, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of impairment under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear

articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

### D.   **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

This application was filed following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant;

18

specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in

19

paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting

20

some parts of a treating source's opinion and rejecting other portions"); <u>Connors v. Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

It is against these legal benchmarks that we assess the instant appeal.

### E.    <u>The ALJ's Decision Will Be Affirmed.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," <u>Pierce</u>, 487 U.S. at 565, but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek</u>, 139 S. Ct. at 1154. Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that D.J.A. was not entirely disabled.

At the outset, on appeal the plaintiff challenges the ALJ's evaluation of the medical opinion evidence, arguing that the ALJ erred in finding the state agency

expert opinions persuasive, and should have instead placed greater weight upon the various teacher evaluations. In our view, this argument fails on several scores.

First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Moreover, when making these determinations it is equally clear that "State agent opinions merit significant consideration." Id. Thus, as a legal matter the ALJ is entitled to rely upon the state agency expert opinions when making a disability determination.

Moreover, in the instant case the state agency expert opinions were well-supported by the clinical and academic record, which simply did not reveal a marked or extreme level of impairment of D.J.A.'s part. Moreover, the ALJ's assessment of these opinions comported with current regulatory guidance which calls upon ALJ's to evaluate medical opinions against the following benchmarks:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. § 404.1520c. Since substantial evidence supported this medical opinion

assessment, and the medical opinions of the state agency experts were consistent

with, and supported by, the academic and clinical record, the ALJ properly relied

upon these opinions in reaching this disability determination.

Finally, we note that Hernandez-Nieves' contention that greater weight

should have been afforded to teacher questionnaires in our view misconstrues the

import of those questionnaires. Fairly construed, the questionnaires did not

describe a disabling level of impairment on D.J.A.'s part. Rather, the questionnaire

responses described her impairments as mild to moderate, but not marked or

extreme. Therefore, these questionnaire responses, which were discussed by the

ALJ in the course of reaching this decision, would not have compelled a finding of

disability in D.J.A.'s case. Simply put, there was no error here.

In the same vein, Hernandez-Nieves's attack on the ALJ overall evaluation

of the evidence fails. As we have noted, an ALJ must consider six domains of

functioning when making a childhood disability determination: (1) Acquiring and

Using Information; (2) Attending and Completing Tasks; (3) Interacting and

Relating with Others; (4) Moving about and Manipulating Objects; (5) Caring for

Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-

(vi). A child can only be found disabled if the ALJ concludes the child exhibits either a "marked" limitation in two of these six domains, or an "extreme" limitation in any single domain. 20 C.F.R. § 416.926a(d). A "marked" limitation must "interfere[] seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation, in turn, must "interfere[] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

In this case, while the academic, clinical, and opinion evidence confirms that D.J.A. faces some learning challenges, this evidence simply did not reveal serious or very serious interference with D.J.A.'s ability to perform in these six realms of functioning. Therefore, substantial evidence; that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, supported the ALJ's disability determination.

At bottom, it appears that the plaintiff is requesting that this court re-weigh the medical evidence and subjective testimony. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether

24

substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record.") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate for the purpose of further assessing this opinion evidence.

In sum, on its merits the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir.

1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)).

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and recommend that this decision be affirmed.

**IV.   <u>Conclusion</u>**

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed and the plaintiff's appeal denied.

An appropriate order follows.

<u>/S/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED:    February 14, 2023

26